MEYERS and another, Respondents, vs. WISCONSIN CENTRAL RAILWAY COMPANY, Appellant.

YOUNG, Respondent, vs. WISCONSIN CENTRAL RAILWAY COMPANY, Appellant.

*May 22—June 20, 1907.*

*Ejectment: Title: Evidence: Location of railroad right of way.*

1. In ejectment plaintiff must recover, if at all, upon the strength of his own title, not upon the weakness of defendant's.
2. In ejectment by plaintiffs claiming under deeds describing the western boundary of the lands conveyed as being the right of way of defendant's railroad "as the same is now located and operated," the evidence is *held* to show that the parcels in dispute were within such right of way and hence that plaintiffs were not entitled to recover.

APPEALS from judgments of the circuit court for Clark county: JAMES O'NEILL, Circuit Judge. *Reversed.*

These are ejectment actions brought by the plaintiffs, respectively, to recover two parcels of land in the village of Abbotsford, Clark county, which are claimed by the defendant to be parts of its right of way. The parcels involved are each marked "Disputed parcel" and surrounded by dotted lines upon the map on p. 403, the southern parcel being claimed by *Meyers* and *Chase* and the northern parcel by *Young*.

The cases are substantially identical in their material facts and were tried upon the same testimony. Both the plaintiffs and the defendant claim under the same original grantor, one Berg, who in 1879 owned the entire quarter-section on which the village of Abbotsford was subsequently laid out and built. In that year the Wisconsin Central Railroad was laid out through said quarter-section, crossing the same in a general north and south course, but slightly curving to the west. The map shows sufficient of the line of the main track as so laid out to show its relation to the disputed tracts. On December 26, 1879, Berg deeded to the Wisconsin Central Railroad Company, to whose rights the defendant has succeeded, a strip of land 150 feet wide for a right of way, being seventy-five feet in width on each side of the center line of the main track as laid out. The east line of this strip is marked "75-foot line" on the map. May 17, 1880, Frederick Abbot became the owner in fee through mesne conveyances from Berg of the entire quarter-section, except the right of way aforesaid. In October of the same year Abbot made and recorded a plat of the village of Abbotsford. By this plat he laid out nearly all of the quarter-section lying east of the railroad right of way into lots and blocks. The west line of the plat, however, did not coincide with the east line of the right of way, but left a strip between. While the map on p. 403 does not show the whole plat, but only the

20]

JANUARY TERM, 1907.

Meyers v. Wis. Cent. R. Co. 132 Wis. 401.

403

southwest part thereof, sufficient is shown to make clear the relation of the platted lands to the right of way. The west line of the platted lands was shown on the plat as a continuous straight line running northwesterly and constituting the west line of First street, being the line marked "West line of plat of Abbotsford" on the map given above. West of this line of the platted land was drawn a dotted line which (according to the scale of the plat) was 150 feet east of and parallel with the center line of the defendant's right of way. This line was not explained by any lettering on the recorded plat, but it is marked "150-foot line" on the map here given for convenience of identification and reference. No 75-foot line was marked on the recorded plat, but the main track of the defendant's railroad was shown, as also its depot and depot grounds, and a dotted line 100 feet west of the main track. There was thus left a strip 150 feet wide east of the main track, and between this strip and the west line of the plat a long triangular piece of land about 100 feet wide on the south and tapering to a point north of Oak street, where the west line of the plat became tangent to the 150-foot line. No distances were marked on the recorded plat outside of the land actually platted, nor was there any lettering except the words "Depot Grounds," "Hotel," "Platform," and the letters "W. C. R. R.," indicating the main track of the railroad. Apparently the lines outside of the platted lands were intended simply to delineate the position of the railroad with reference to the proposed village.

In October, 1882, Abbot deeded to one Maguire a piece of land outside of the plat and between the west line of First street and the railroad right of way which was described as beginning on the west line of First street on a continuation of the southern boundary line of lot 5 in block A of the plat, running westerly along said continued lot line to the right of. way of the Wisconsin Central Railroad, thence southerly, along said right of way, to the south line of the section, thence

easterly to the west line of First street, thence northerly, along said First street, to the place of beginning. In March, 1883, Abbot deeded to said Maguire a piece immediately north of the last-named parcel and bounded on the north by a continuation of the southerly line of lot 6 of the plat, on the south by the land previously deeded, on the west by the railroad right of way, and on the east by First street. In 1883 or 1884 Maguire built a store on the southerly "disputed parcel," which extended easterly, so that a small portion of it stood on the parcel marked "Meyers & Chase." In June, 1885, Maguire deeded both parcels to one Roter, who thereafter conducted the store until it was burned a few months later. The description in Roter's deed was substantially the same as in the deeds to Maguire, the western boundary being the line of the railroad right of way. In 1886 Roter built a new store, but located it entirely on the parcel marked "Meyers & Chase," except that at the southwest corner it projected over on the "disputed parcel" about a foot and a half. Roter occupied this store until September, 1897, when he sold and deeded a parcel of land intended to include the store to the plaintiff *Chase*. This parcel was described as beginning at the southeast corner of the parcel marked "Meyers & Chase," running northwesterly along the west line of First street sixty-nine feet; thence west to the "right of way of the Wisconsin Central Railroad *as the same is now located and operated;*" thence south, along said right of way, to Spruce street; thence east, along the north line of Spruce street, to the place of beginning. In July, 1900, *Chase* deeded to the plaintiff *Meyers* an undivided one-half of the same parcel under the same description.

It will be observed that if the right of way of the defendant as then "located and operated" was at the 75-foot line, the parcel deeded to *Meyers* included the disputed parcel in the *Chase* and *Meyers* action, while if said right of way was at the "150-foot line" it did not.

In March, 1899, Roter deeded to the plaintiff *Young* a parcel north of the *Chase* and *Meyers* parcel, which included the parcel marked "Young" on the map, describing its westerly line as the east line of the right of way of the Wisconsin Central Railroad *"as the same is now located and operated."* This deed included the north "disputed parcel" if the right of way was at the 150-foot line, but did not include it if at the "75-foot line." In October, 1897, Abbot deeded to the defendant all of the "150-foot strip" east of the center line of the main track of the railroad.

Other facts in evidence relating to the use of the disputed parcels will be stated in the opinion. The court made general findings in each case to the effect that the plaintiffs were the owners in fee of the disputed parcels claimed by them respectively; that the defendant for more than a year prior to the commencement of the action had exercised acts of ownership over them and claimed title to them; that they were never occupied for railroad purposes; that the defendant had not adversely occupied them for ten years; and that the plaintiffs were entitled to recover possession. Judgments for the plaintiffs in accordance with these findings were rendered, and the defendant appealed in each case.

For the appellant there was a brief by *Thomas H. Gill* and *Walter D. Corrigan,* and oral argument by *Mr. Corrigan.*

For the respondents there was a brief by *F. M. Jackson* and *Marsh & Schoengarth,* and oral argument by *S. M. Marsh.*

WINSLOW, J. It is a familiar principle in the law of ejectment that a plaintiff must recover, if he recover at all, by virtue of the strength of his own title and not by virtue of the weakness of the defendant's title. Therefore the first inquiry logically is whether the plaintiffs have shown title to the disputed parcels. This question involves primarily the construction of the deeds from Roter under which the plaint-

iffs claim. If these deeds do not, when properly construed, convey to the plaintiffs any part of the disputed parcels, then they can have no recovery, notwithstanding the defendant's title may not be good. It will be observed by reference to the statement of facts that when Abbot conveyed to Maguire in 1883, and when Maguire conveyed to Roter in 1885, the western boundary of the land conveyed was described in the deeds as the easterly boundary of the right of way of the Wisconsin Central Railroad, but that, when Roter conveyed to the plaintiffs in 1897 and 1899, the western boundary of the lands conveyed was described as "the right of way of the *Wisconsin Central Railroad as now located and operated."* In view of the facts as to the occupation and use of the lands soon to be stated, the change in the description of the western boundary is very significant. Irrespective of any such facts, however, it is unquestionable that there is a very material difference between the two grants. The earlier grants undoubtedly extended to the east line of the land to which the railroad company had previously acquired title for right-of-way purposes, regardless of the question of occupation or use, but the later deeds, with equal clearness, limit the grants to the east line of land which was at that time located and actually operated as a right of way. They call for a boundary line which cannot be determined by courses and distances, but must be determined by proof of extrinsic facts, namely, use and occupation for right-of-way purposes, whether under good or bad title. This is not an ambiguity in the deed, but simply a call in the deed like a tree or the bank of a river, which must be located by examination of the land itself. When the place is found the boundary of the land conveyed is also found. The testimony must therefore be examined to see whether it shows that a definitely bounded strip of land was located and operated by the defendant as a right of way at the time the plaintiffs' deeds were made, and, if so, where the east line of that land was situated. The testimony is not en-

408      SUPREME COURT OF WISCONSIN.  [June

Meyers v. Wis. Cent. R. Co. 132 Wis. 401.

tirely harmonious in details, but the essential facts are not in dispute nor uncertain.

The village of Abbotsford originally came into existence by reason of the building of the defendant's railroad and the establishment of a railroad station. The original grant of a right of way in 1879 was but seventy-five feet in width on each side of the center line. When Mr. Abbot, who was the land commissioner of the railway company at the time, platted the village in 1880, he seemed to consider that the right of way on the east side of the center line was 150 feet in width— at least it is so indicated on his plat. In 1883 the railway company caused a large map of its right of way and grounds in Abbotsford to be made, upon which the right of way on the east side of the center line was represented as 150 feet in width. This claim does not affect plaintiffs, as they were not informed of it, but it throws some light upon the subsequent acts of the railroad company. When Maguire received his deeds in 1882 and 1883 there were apparently no fences nor any clearly defined lines of occupation. He built his store largely upon the southerly "disputed parcel" and within the 150-foot line, but this was burned down in 1885. When Roter rebuilt in 1886 he changed the location of the store to the east, and built entirely upon the parcel marked "Meyers & Chase," except that a very small part of the southwest corner extended a foot and a half over the line. Roter testifies that he was told that the line was where the new store was built, and even then he got a few inches further west than he intended. He also testifies that he had an icehouse just north of his new store and on the 150-foot line and a woodshed still further north, and that in 1892 he built a board fence nearly on the 150-foot line between the two buildings, and that he continued the fence around the north and east sides of his premises, thus practically inclosing the two parcels marked "Young" and "Meyers & Chase" on the map, and that he placed the fence upon the 150-foot line because he

supposed that was the line of the right of way. At this time
the plaintiff *Meyers* worked for Roter and knew of the build-
ing of the fence. Roter further testifies that at some time
after the building of the new store (the exact date not being
given) the depot agent of defendant came to him and claimed
all the land up to the 150-foot line, and in accordance with
this claim he moved off an old shed and also some old boxes
which he had piled there. This apparently was in the year
1894. After this no part of the 150-foot strip in the rear of
either the *Young* property or the adjoining *Meyers* and *Chase*
property was occupied by any buildings. It lay open and was
sometimes used to burn rubbish upon, and could be driven
into from Spruce street on the south. The railroad company
erected a new freight house and platform and icehouse in
1889 or 1890, as indicated on the map, and have since main-
tained them there. As will be seen, they are largely located
on the east half of the 150-foot strip, a little north of the dis-
puted tracts. After the building of these buildings all who
wished to get freight from the freight house by team crossed
the disputed parcels upon the driveway marked on the map.
Roter used this driveway to get to the freight depot, and the
plaintiffs *Meyers* and *Chase* have also used it, but all others
who wished to get to the freight depot used it in common and
without objection.

Prior to the building of the new freight house a number of
side tracks had been constructed on the east side of the main
track, running north from the freight house for several blocks,
and one of these side tracks was for a long distance wholly on
the east seventy-five feet of the 150-foot strip. Along the east
side of this track and on the east seventy-five feet, opposite
block B on the map, a number of warehouses were built by
permission or under leases from the company during the
years immediately following the building of the freight house.
There is some testimony that the railroad company piled ties
and telegraph poles at times on the disputed parcels, but this

is denied by other witnesses. The plaintiffs did not use it except to pass over when driving to the freight depot or to burn rubbish upon. In January, 1899, the railroad company presented to *Meyers* and *Chase* a lease of the small corner of the 150-foot strip occupied by their store, and *Meyers* signed the same without objection.

In view of the facts thus appearing relating to the condition and use of the disputed parcels of land at the time of and long prior to the time of the execution of the plaintiffs' deeds, there seems no doubt that the whole 150-foot strip was then occupied by the defendant as a part of its right of way, and consequently that the plaintiffs' deeds do not include and were not intended to include any portion of such strip.

In this connection the allegations of the complaints in both actions are very significant and well-nigh controlling. These complaints were verified October 10, 1903, and they both allege that the defendant has unlawfully withheld possession of the premises in dispute *for the past five years and more.* This allegation takes the possession of the railroad company back to October, 1898, almost to the time of the execution of Roter's deed to *Chase* and prior to the execution of Roter's deed to *Young.* There is no claim that the situation as to possession was in any respect different in September, 1897, from what it was in October, 1898.

Our conclusions are that the evidence shows without serious question that the parcels in dispute were within the defendant's right of way as located and operated at the time the plaintiffs' deeds were made, and hence that the plaintiffs were not entitled to judgment.

*By the Court.*—Judgment in both cases reversed, and actions remanded with directions to render judgment in each case for the defendant dismissing the complaint.